Moncure, J.
after stating the case, proceeded :
The principal subject of controversy in this case is, the amount of compensation to which the appellant is entitled for the masonry of the two bridges made by him for the appellees. He charges nine dollars per perch for dressing, ranging and laying the stone, besides making other charges connected with the masonry; whereas the price stipulated in the contracts and allowed in the final estimates, for the entire masonry, is four dollars per perch for that of one of the bridges, and four dollars and ninety-four cents for that of the other. The difference between the amount charged by him, and the amount allowed in the final estimates, for the masonry, is upwards of thirty-five thousand dollars.
The appellant contends that the masonry required by the contracts was “rubble work,” whereas he was required by the appellees to do and accordingly did do “ranged rock work;” that though the contracts required that the stone should have “ good natural beds,” and be “ well bedded and bonded,” yet those terms should be construed in reference to all the surrounding circumstances, and especially in reference to the quarries in the neighboi-hood of the bridges, and the nature and quality of the stone they afforded; that the stone of which the bridges were constructed had “ good natural beds,” and might have been “ well bedded and bonded,” within the meaning of the contracts, by the use of the hammer merely. That if the work required by the contracts to be done was worth four dollars and four dollars and ninety-four cents per perch, the work required by the appellees to be done, and actually done, was, in the same proportion, worth nine dollars per perch ; and that there *688 fore he is entitled to the latter price. On the other hand, the appellees contend that the stone of which bridges were constructed had not “ good natural beds,” and could not have been “well bedded and bonded,” within the meaning of the contract, by the use of the hammer merely; that they had a right to require, and only required, the work to be done according to the contracts, but as it could not be done with the stone which was used, they were willing that it might be done in the manner in which it was done; that the change in the manner of doing the work was no benefit to them, but an accommodation to the appellant, who was thereby enabled to do it on better terms than he could have done it according to the contracts; that he assented to the-change, and did not complain of it to any of the engineers; that the work actually done was but “ rubble work,” though of a superior quality, and was not worth more than the contract prices; and that therefore he is entitled only to the contract prices.
The evidence is very conflicting as to the meaning of the technical terms used in the contracts, the character of the work thereby required, and the“character and value of the work actually done. It would be difficult for the court to decide upon this evidence without the aid of a commissioner or a jury: But it is unnecessary in this case to do so. The appellees presented to the appellant the alternative of doing the work according to their construction of the contracts, or of doing it as it actually was done; and he elected the latter. He knew that they considered him to be doing the work at the contract prices; and yet during the whole progress of the work, which continued for about two and a half years, he never gave them notice that he would claim a higher compensation. On the contrary, he received from time to -time, without objection, the amounts awarded him *689 in the monthly estimates, though in all of them the work done was charged at the contract prices. Edgerton, a resident engineer, proves that he had a conversation on the subject with the appellant soon after the work was commenced. The appellant “ frequently alluded to the character of the work as being superior to what he was required to* do by the contract. He was repeatedly told, if he thought so, to discontinue the work until the question could be settled; to do no more until that matter should be finally settled.” Atkinson, the division engineer, proves that the appellant never complained to him that he was required to do the work in a different style from that required by the contracts; on the contrary, deponent being told that appellant was complaining to others, asked him if he had any complaint, and lie answered very positively that he would never have any controversy with deponent. Latrobe, the engineer of location and construction, proves that if he had been apprised of any intention on the part of the appellant to demand extra compensation for his work, he would immediately have had a communication with him on the subject, and have taken measures to put an end to any such expectations. Deponent is satisfied that at the time the appellant got fairly under way with his job, which was in the summer of 1840, he the deponent could have procured the work to be done precisely in the style in which the appellant then proposed to do it, and has since done it, at a price not exceeding that of his contract.
Under all these circumstances, I am of opinion that whatever may be the true construction of the contracts, the appellant acquiesced in the construction placed upon them by the appellees, and is concluded by such acquiescence from claiming a higher compensation for the masonry than the prices stipulated for in the contracts, and allowed in the final estimates.
*690 I am also of opinion that the final estimates are conclusive not only in regard to the masonary, but also in regard to all other items of the appellant’s claim, except two items of small amount, which will be hereafter noticed. The contracts expressly provided that when the work was completed and accepted, final estimates should be made by the agent of the company, of the quantity, character and value of the work agreeably to the terms of the contracts, which final estimates should be conclusive between the parties, unless reviewed and altered by the engineer of location and construction; and that the balance appearing to be due to the contractor should be paid to him upon his giving a release to the company of all claims or demands whatsoever, growing in any manner out of the agreement. The final estimates were made according to the contracts, and have not been reviewed and altered by the engineer of location and construction: Why then ai*e they not conclusive ? The counsel for the appellant contended that such provisions are against the policy of the common law, and have a tendency to exclude the jurisdiction of the courts, which are provided by the government with ample means to entertain and decide all legal controversies. Story on Partn. § 215, and cases cited in the notes. The doctrine relied on refers to agreements to refer disputes to arbitration; 'such as a stipulation, usually inserted in articles of partnership, that disputes and controversies between the partners shall be referred to arbitrators named in the articles, or to be named by the respective partners. It may well be questioned whether the provisions of the contracts in this case for the final estimates come within the influence of the doctrine relied on. They seem to stand on higher ground than mere agreements for future reference; and to be substantial and irrevocable parts of the contracts in which they are embodied. But waiving the decision of that *691 question, and conceding for the purposes of this case, that these provisions are in effect agreements for future reference, and are governed by the doctrine to, I am still of opinion that the final estimates are conclusive. “ The maxim often quoted, says Russell on Arbitration 103, 104, 63 Law Libr. that an agreement to refer is not binding, and cannot deprive the court of its jurisdiction, seems sometimes to have been misunderstood.”—“ In one sense, it is true, such an agreement may be said not to be binding, for it eannot be pleaded in bar to an action in respect of the matters intended to be referred, and so does not oust the court of its jurisdiction;” and it is very clear that equity will not specifically enforce it. “ But in another sense, it is binding, for there is nothing illegal in such a contract; and when it is acted on, and an award has been made, the jurisdiction of the courts over the matter decided by the arbitrator is gone, and all that the court have to say is, whether the award is good or not.” Wellington v. Mackintosh, 2 Atk. R. 569; Hill v. Hollister, 1 Wils. R. 129; Halfhide v. Fenning, 2 Br. C. C. 336; Mitchell v. Harris, 2 Ves. jr. R. 129; Thompson v. Charnock, 8 T. R. 139; Street v. Rigby, 6 Ves. R. 815; Waters v. Taylor, 15 Id. 10; Cleworth v. Pickford, 7 Mees, and Welsb. 313, Lord Abinger, C. B. See the American eases cited in 2 Bro. C. C. 270, note (a) Perkins’ edition.
According to the doctrine as thus laid down, even if the final estimates had been made without any cooperation on the part of the appellant, or further assent from him than was given by his becoming a party to the contracts, they would have had the effect of final awards, and been conclusive as such. In this case the appellant not only made no objection to the action of the agent in making the final estimates, nor any attempt to revoke his powers to make them, but actually appeared and exhibited his claims against the *692 company before the engineer, who allowed some and rejected others, in whole or in part; and the appellant at first to acquiesce in the final estimates which were mac¡e- These estimates were made by the resi-. engineers, with the concurrence of the division engineer. Edgerton, the resident engineer at the North Branch bridge, says that the appellant never expressed any dissatisfaction with the monthly estimates, and when deponent gave him a copy of the final estimate, he appeared to be fully satisfied with it, as far as deponent was concerned, and expressed his assent to all the particulars, therein. Chiffelle, the resident engineer at the Little Cacapon bridge, says that in making out the final estimate the most liberal allowance which truth and equity could have dictated, was made to the appellant. Atkinson, the division engineer,, says that he never heard the appellant make any specific objection to any of the monthly or final estimates. Appellant sometimes asked if the company could not allow, more. With regard to the final estimates, deponent took particular care to learn his views, made all the allowances that were required, and supposed he had removed all grounds of complaint, and had made the estimates satisfactory. In order to make up the final estimates and remove all sources of complaint, deponent requested the appellant to remain and come to deponent’s office in Cumberland, and give deponent notice of all extra work that he supposed he had done on the bridges, or under any other head for the company, for which he had not been already paid. In consequence of this request, the appellant did remain in Cumberland, calling at deponent’s office frequently while the latter was engaged in making up the items, answering such questions as were asked him, and by his conduct satisfying deponent that he considered every ground of complaint was removed. Deponent’s reason for requesting the appellant to be *693 present was, that under such extensive contracts extra charges which were equitable might possibly escape the notiee of the engineers, and that deponent wished the appellant to suggest such, if any there were. Told Mm this was- deponent’s design, and had the benefit of his suggestions accordingly. Has no recollection that he objected to any of the items. When deponent handed him the final estimate of the North Branch bridge, i. e. the amount made up in dollars, the appellant said, good naturedly, as deponent .supposed, ■“Is that all?” The impression made on deponent’s mind was that he was going to the office to receive the balance due Mm according to the estimate.
Some of the testimony of the appellant is to some extent in conflict with the foregoing testimony of the appellees, but does not materially alter the ease. Better’s testimony tends to prove that the resident engineer, Edgerton, obtained from the appellant hills only for such extra work as was occasioned by the mistakes of the engineer, and not for -all the extra work. But A. GK Kid well says that he took a great many of the bills for extra work to the engineers. They received a part, rejected a part, and curtailed the amount of a good many 'of the bills. Edgerton made out the final estimate, and showed it to the appellant in deponent’s presence. The appellant complained of a good many of the amounts not being large enough, and asked if they were not going to allow for laying the masonry in cement mortar, and cutting and dressing the stone. Mr. Atkinson said he could not allow it, because Mr. Latrobe told Mm he would not allow it. Davis says, Mr. Atkinson showed the final estimate to the appellant in the presence of deponent, in the railroad offiee in Baltimore. Thinks it was upwards of eleven thousand dollars. Appellant asked Atkinson if that was all he was going to do for him. Atkinson said, “ Yes, and you may he thankful to get thatand appellant said he would not take it.
*694 From all the testimony on both sides, it is manifiest that the appellant submitted all his claims arising out of the contracts, or on account of the work done by him for the company, to the consideration and decision of the engineer: And upon every principle of law or equity which is applicable to the case, I think the final estimates of the engineer are conclusive ; unless they can be avoided on the ground of fraud or mistake. Has fraud or mistake been shown? is therefore the question next to be considered.
In neither of the bills, original or amended, is any fraud imputed to the engineers in making the final estimates. The original bill contains no allegation of any fraud whatever. The amended bill seems to have been filed mainly with the view of supplying this defect; and charges, in effect, that before and at the time the bids were made upon which the contracts were based, the said company, by their agents and officers, falsely and fraudulently represented to the public, and to the bidders, to induce them to offer for work at low rates, that suitable materials for the erection of the bridges were to be had convenient to the line of the road and the sites of the bridges. This charge is positively denied in the answer to the amended bill, and is unsustained by any evidence whatever.
The amended bill also charges that when the contracts were made and during the progress of the work, Latrobe and Atkinson were stockholders of the company, and therefore not impartial or disinterested; that the appellees did not inform the appellant of this fact as they ought to have done; and that he was not aware of it. The appellees in their answer admit that Latrobe was a stockholder when the contracts were made; but deny that he was one when the final estimates were made, or that Atkinson ever was one. The answer on this subject is sustained by the evidence; except that Atkinson says he has had a few shares of *695 stock at different times, but had none he believes while the North Branch bridge was in pi-ogress. The only stock held by him since 1838 was three shares held trust for another for not more than a year, and then sold in November 1842.
The final estimates, as before stated, were made by the resident engineers, and concurred in by Atkinson the division engineer. I do not think their validity is affected by the fact that when they were made Latrobe had been a stockholder, and Atkinson was a stockholder in the character of trustee for another, without having, himself, any interest in the subject. Whether, if they had been made by an engineer who, at the time of making them, was a stockholder in his own right, they would have been invalid merely on that ground and in the absence of fraud, is a question which does not arise, and is therefore not intended to be decided.
The answer to the amended bill positively denies fraud of any kind on the part of the company, their agents and officers, and the evidence affords no proof of any such fraud in the transaction.
As to the ground of mistake: If either of the bills contains any charge, certainly the evidence affords no proof of any such mistake on the part of the engineers as can invalidate their final estimates. There is no mistake of law or fact apparent upon the face of the estimates; and the engineers who made them, testify that all the claims of the appellant against the company, on account of the bridges, which were just and right, were allowed therein.
On this subject, see 2 Story’s Eq. Jur. § 1453, 4, 5 and 6, and Russell on Arbitration 242, et seq. 63 Law Libr.
The final estimates were intended by the parties to be, and are, conclusive in regard to all work done and materials furnished by the appellant in the construction of the bridges, including all extra work. In this *696 respect, the case differs from that of Dubois v. The Delaware & Hudson Canal Company, 12 Wend. R. 334, relied on by the appellant’s counsel. All the items of the appellant’s claim in this suit appear to be for work done by him in the construction of the bridges, except two items of small amount, before referred to. One of these is for building two cattle stops; and is proved to have been paid. The other is for loss on city stock; for which I think the appellees are not responsible; the appellant having agreed to receive the stock at par.
I think there is no error in the decrees for which they ought to be reversed, and am for affirming them.
The other judges concurred in the opinion; of Moncure, J.
Decree affirmed.